```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/'09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA,
                                    :

                                    :          **OPINION**

          - against -
                                    :          08 Civ. 171 (DC)
JAIME GOMEZ,                                    99 Cr. 1048 (DC)
                                    :

          Defendant.
                                    :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**     LEV L. DASSIN, Esq.
                     Acting United States Attorney for the
                         Southern District of New York
                     One Saint Andrew's Plaza
                     New York, NY  10007

                     JAIME GOMEZ
                     Pro Se Defendant
                     USP Beaumont
                     P.O. Box 26030
                     Beaumont, TX  77720

**CHIN, District Judge**

          Pro se defendant Jaime Gomez moves to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on

the ground that he was denied effective assistance of counsel in

violation of the Sixth Amendment of the United States

Constitution when he was convicted of conspiracy, murder, and

narcotics charges.  For the reasons set forth below, the motion

is denied.[1]

----

[1]      Because I find that "[i]t plainly appears from the face
of the [section 2255] motion and . . . the prior proceedings in
the case that [Gomez] is not entitled to relief," I do not order
the United States Attorney to file an answer to the instant
motion.  See Rules Governing Section 2255 Proceedings for the
U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820,
822-23 (2d Cir. 2000).

## BACKGROUND

### A.    Facts

Because Gomez was convicted, the evidence presented at trial is construed in the light most favorable to the Government. See United States v. Morales, 974 F. Supp. 315, 318 (S.D.N.Y. 1997).

The Reyes heroin organization was a large-scale heroin distribution operation run by Juan ("Junior") Matos Reyes out of the Dominican Republic. (Tr. 335, 363, 375). Johan Pena-Perez and an individual known as El Potro ran the New York organization under Junior's direction. (Id. at 375, 377).

In May 1998, Andres Peralta, a member of the organization, hired Gomez, Thomas Marmolejas, and Johnny Martinez to kill Pena-Perez and Nilton Duran. (Id. at 383-85). Junior wanted the two men killed because they had allegedly turned against the organization by robbing one of its own apartments and taking one or two kilos of heroin, between $30,000 and $100,000 in cash, and a beeper that the organization's customers used to contact it. (Id. at 377, 380, 382-83).

On May 25, 1998, Peralta met with Junior's brother, Robinson Reyes, as well as Gomez, Marmolejas, and Martinez at 230th Street and Bailey Avenue in the Bronx. (Id. at 385, 389). Gomez, Marmolejas, Martinez, and Robinson then made their first attempt to locate Pena-Perez and Duran. (Id. at 389, 392). They drove to a building in the Bronx and waited four or five hours

for Pena-Perez and Duran to emerge from the building, but they
did not come out. (Id. at 399-401).

The next day, the same individuals met again at 230th
Street and Bailey Avenue. (Id. at 402). Marmolejas drove the
group to the same location where they had waited the previous
evening, and they waited for Pena-Perez and Duran for six hours
or more. (Id. at 334, 404, 424, 428). Finally, Pena-Perez and
Duran exited the building, got into a Toyota Camry, and drove
away. (Id. at 434, 435, 437). The men in the van followed, and
when the Camry stopped on Walton Avenue at a red light, Gomez
took out a machine gun from a secret compartment in the van.
(Id. at 441-42). Gomez got out, carrying the machine gun, and
fired fifteen to twenty shots at the Camry. (Id. at 441-42,
455). The Camry took off, the van followed, and the Camry then
crashed into another car. (Id. at 456-57). Duran exited the
Camry and ran. (Id. at 457-58). Gomez had returned to the van,
but when he saw Duran run from the Camry, he took a pistol and
ran after him. (Id. at 459).

Several plainclothes officers from the New York City
Police Department were on patrol in the area. They immediately
went to Walton Avenue after hearing the gunshots. (Id. at
100-01). There, they saw Gomez run inside 1729 Walton Avenue
carrying a gun and heard shots being fired inside the building.
(Id. at 102, 155). The officers followed Gomez into the
building. (Id. at 102). They momentarily retreated before
re-entering the building, where they encountered Gomez coming

- 3 -

down the stairs. (Id. at 102-03). When Gomez saw the officers, he dropped his weapon and fled up the stairs. (Id. at 103). The officers chased him. (Id. 104-05). While Gomez was running up the stairs, the officers found Duran bleeding on the third floor landing. (Id. at 105, 115). Duran yelled "that guy just shot me" and pointed up the stairs. (Id. at 158). The officers caught Gomez on the roof and arrested him. (Id. at 159). Pena-Perez was found dead in the Camry on Walton Avenue. (Id. at 108, 131, 160).[2]

**B.    Procedural History**

The original indictment was filed against Gomez, Banks, Marmolejas, Martinez, Mercedes, Peralta, and Mojica on October 12, 1999. It was superseded on October 16, 2001 and again on November 20, 2001. The second superseding indictment contained eight counts. Count One charged defendants with conspiracy to commit robbery and extortion, in violation of 18 U.S.C. § 1951. Count Two charged conspiracy to commit murder-for-hire and Count Three charged substantive murder-for-hire, both in violation of 18 U.S.C. § 1958. Count Four charged conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. Count Five charged defendants with murder while engaged in a major drug conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A). Count Six charged defendants with using and carrying firearms in relation to crimes

---

[2]    In addition to the testimony of the police officers, the evidence included a videotaped confession from Gomez.

of violence, in violation of 18 U.S.C. § 924(c).  Count Seven
charged murder in the course of a § 924(c) violation, pursuant to
18 U.S.C. § 924(j), and Count Eight was filed against Marmolejas
alone.

Gomez pled not guilty on November 27, 2001, and the
trial of the charges against him and Marmolejas began on January
14, 2002.  On February 1, 2002, the jury found Gomez guilty on
all seven counts he was charged with.  On September 19, 2002,
Gomez was sentenced on Counts One, Two, Three, Four, Five, Six,
and Seven to life imprisonment, followed by a consecutive ten-
year term and three years' supervised release, and $700 in
special assessments.

Lynn Stewart and Sabrina Shroff represented Gomez at
trial and sentencing.  On April 9, 2002, during the period
between the culmination of Gomez's trial and his sentencing,
Stewart was indicted by a federal grand jury.[3]  United States v.
Stewart, No. 02 CR. 396 (JGK), 2002 WL 1300059 (S.D.N.Y. Feb. 10,
2005).  On April 30, 2002, this Court conducted a Curcio hearing.
Gomez requested that he be allowed to continue to be represented
by Stewart.  I found that Gomez knowingly and intelligently
waived any objection that he might have had to any conflict of

---

[3]     Stewart was charged with conspiring to provide material
support to a foreign terrorist organization, providing material
support to a foreign terrorist organization, conspiring to
defraud the United States, and making false statements to federal
officers.  Stewart was subsequently convicted, N.Y. Lawyer Lynne
Stewart Convicted of Helping Terrorists, N.Y. Law Journal, Feb.
11, 2005, and sentenced to twenty-eight months' imprisonment,
Lynne Stewart Gets 28-Month Sentence, N.Y. Law Journal, Oct. 17,
2006.

interest arising from Stewart's indictment.  On July 28, 2004,
Gomez's post-trial motions, which had been filed by Stewart and
Shroff, were denied.  See United States v. Gomez, 210 F. Supp. 2d
465.  Gomez, through his counsel, Stewart and Shroff, filed a
notice of appeal to the Second Circuit on September 27, 2002.
The Second Circuit allowed Stewart to argue before the court
while under indictment.  On October 27, 2004, the Second Circuit
affirmed Gomez's conviction.  See United States v. Marmolejas,
112 Fed. Appx, 779, 780-81 (2d Cir. 2004).  On September 1, 2005,
the Second Circuit, by order, remanded Gomez's appeal to this
Court for further proceedings in light of United States v.
Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397
F.3d 103 (2d Cir. 2005).

        While the case was on remand for possible re-
sentencing, Gomez's petition for certiorari to the Supreme Court
was denied on October 3, 2005.  See Gomez v. United States, 546
U.S. 868 (2005).  On October 24, 2005, Gomez moved to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  By
order dated November 28, 2005, this Court denied the motion
without prejudice as premature.

        Consistent with the Second Circuit's sentencing remand,
the parties appeared before the Court on November 2, 2006.  As
Stewart had been convicted and sentenced in the meantime, I
appointed Shroff to represent Gomez, and he was represented only
by Shroff at the hearing.  Both the Government and the defendant
agreed that under 18 U.S.C. § 1958 the Court had no discretion to

impose a lesser sentence.  (Sentencing Tr. 3, 6).  By order dated
November 6, 2006, I upheld Gomez's sentence of life imprisonment
plus ten years as reasonable under <u>Booker</u>.

On May 30, 2007, Gomez filed a notice of appeal.  By
order dated June 25, 2007, I denied the notice of appeal as
untimely.  On July 26, 2007, Gomez moved, pursuant to Rule 59(e)
of the Federal Rules of Criminal Procedure, for reconsideration
of this Court's June 25, 2007 order.  By order dated August 14,
2007, I denied the motion for reconsideration.  Gomez had not
raised any new arguments entitling him to file a notice of
appeal.  I reaffirmed my prior rulings and declined to issue a
certificate of appealability.  On November 6, 2007, the Second
Circuit dismissed Gomez's appeal as untimely.  <u>United States v.
Gomez</u>, No. 07-2910-cr, slip op. at 1 (2d Cir. Nov. 6, 2007).

On January 22, 2008, Gomez, proceeding <u>pro se</u>, moved to
vacate, correct, or set aside his sentence pursuant to 28 U.S.C.
§ 2255.

<b>DISCUSSION</b>

Gomez argues that he received ineffective assistance of
counsel, in violation of the Sixth Amendment, for the following
reasons:  (1) counsel failed to move to dismiss the superseding
indictment for violating the Speedy Trial Act; (2) counsel failed
to move to dismiss the superseding indictment for being
multiplicitous; (3) counsel labored under a conflict of interest;
(4) counsel failed to contact petitioner's native country
consulate in violation of the Vienna Convention; (5) counsel

- 7 -

failed to file a notice of appeal, as instructed to do so
following re-sentencing on November 7, 2006; and (6) counsel
failed to file a petition for a writ of certiorari and advise
petitioner of his right to seek review from the Supreme Court.
Gomez has not demonstrated any basis for relief on his claims.
For the reasons below his petition is denied.

### A.   Applicable Law

To prove ineffective assistance of counsel, Gomez must
show that (1) his counsel's performance fell below an objective
standard of reasonableness under prevailing professional norms;
and (2) he was prejudiced by counsel's deficient performance.
See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); United
States v. Vegas, 27 F.3d 773 (2d Cir. 1994).  To demonstrate
prejudice, Gomez must show that, but for counsel's errors, there
is a sufficient probability that the outcome of the proceeding
would have been different.  See Strickland, 466 U.S. at 694.

When applying the Strickland test, "judicial scrutiny
of counsel's performance must be highly deferential."
Strickland, 466 U.S. at 689.  "The court's central concern is not
with 'grading counsel's performance,' . . . but with discerning
'whether despite the strong presumption of reliability, the
result of the particular proceeding is unreliable because of a
breakdown in the adversarial process that our system counts on to
produce just results.'"  United States v. Aguirre, 912 F.2d 555,
561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97).

- 8 -

**B.   Analysis**

### 1.   Speedy Trial Act

Gomez claims that his counsel was ineffective in failing to move to dismiss the superseding indictment for violating the Speedy Trial Act.   The Speedy Trial Act provides, in part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. 3161 (2006).   "If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance."   Boyd v. Hawk, 965 F. Supp. 443, 450 (S.D.N.Y. 1996); see also Douglas v. Hollins, No. 00 Civ. 7928 (MBM), 2004 WL 187130, at *5 (S.D.N.Y. 2004); Romero v. Keane, No. 92 Civ. 2495 (MBM), 1993 WL 228076, at *5 (S.D.N.Y. 1993).

In this case, the record establishes that there was no speedy trial violation.   Gomez was arraigned on October 11, 1999. From that date through January 11, 2001, I held seven pretrial conferences and time was properly excluded between those dates. (Dkt. 99-cr-01048(DC)).   The record is unclear, and I do not recall, whether I prospectively excluded time at the January 11, 2001 pretrial conference until the next conference, as is my

normal practice.  (Docket entry # 24).  Regardless, there was a
motion pending, which was not decided until February 26, 2001.
(Docket entry # 30).  Periods of delay resulting from any
pretrial motion -- from its filing to its disposition -- are
excluded from Speedy Trial Act calculations.  See 18 U.S.C. §
3161(h)(1)(D).  Thus, the time from January 11, 2001 until
February 26, 2001 was excluded by virtue of the motion.  See,
e.g., Boyd, 954 F. Supp. at 450.  Starting on April 3, 2001, I
clearly excluded time until the date of the trial.  Accordingly,
at worst, I failed to exclude time from February 26, 2001 through
April 3, 2001, a total of thirty-six days.  The Speedy Trial Act
allows up to seventy unexcluded days between the arraignment of a
defendant and his trial.  See 18 U.S.C. § 3161(c)(1).  Hence, a
speedy trial motion would not have been successful and therefore
Gomez's counsel was not ineffective for failing to make such a
motion.

### 2.   **Multiplicitous Claims**

Gomez asserts that his counsel was ineffective in not
moving to dismiss the superseding indictment for being
multiplicitous.  Again, failure to raise a motion does not
constitute ineffective assistance of counsel if the motion would
likely have been unsuccessful.  A motion to dismiss the
superseding indictment would have been denied because the crimes
Gomez was charged with were not multiplicitous.

Gomez's argument is unclear, but he seems to be
contending that Counts Two, Three, and Four of the superseding

- 10 -

indictment were multiplicitous, in violation of the test articulated in Blockburger v. United States, 284 U.S. 299 (1932), because the same element can satisfy all three counts.  Gomez, however, does not articulate the element to which he is referring.  In any event, Gomez misconstrues the Blockburger test and his claim that the superseding indictment was multiplicitous lacks merit.

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304.  It is possible for one singular act to be an offense under more than one statute.  Id. (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)).  "'[I]f each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'"  Id.

In this case, each count of the superseding indictment that Gomez was charged with required an element that was unique to that count.  Count Two, conspiracy to commit murder-for-hire, required the existence of a conspiracy to commit murder-for-hire and proof that Gomez was a member of the conspiracy.  (Jury Charge at 24-26).  Count Three, murder-for-hire, required that Gomez committed the substantive crime of murder-for-hire.  (Id. at 27).  Count Four, narcotics conspiracy, required the existence

- 11 -

of a narcotics conspiracy and proof that Gomez was a member of the conspiracy.  (Id. at 32-34).

Count Four was entirely distinct from Counts Two and Three.  It required the existence of a narcotics conspiracy, which was not necessary to prove either Count Two or Three. Counts Two and Three were also distinct from one another.  Though Counts Two and Three both involved the crime of murder-for-hire, they required the satisfaction of different elements.  Conspiracy to commit murder-for-hire did not require the substantive crime of murder-for-hire to have occurred.  It simply required that a conspiracy to commit murder-for-hire be formed, and that the defendant be a member of the conspiracy.  The substantive crime of murder-for-hire, on the other hand, required that the crime of murder-for-hire be carried out and, in this case, the defendant aided and abetted those who committed the crime.  The crimes of conspiracy to commit murder-for-hire and murder-for-hire, though similar, are distinct.  One crime may be committed without the other, and each requires the satisfaction of a separate element. The distinction between these two crimes was articulated at length in the charge to the jury following trial.  Therefore, under Blockburger, the crimes were not multiplicitous.  Gomez's claim for ineffective assistance of counsel for failing to move to dismiss the superseding indictment is thus denied.

### 3.   Conflict of Interest

Gomez claims that his counsel, Lynne Stewart, labored under a conflict of interest because during his trial Stewart was

under investigation and is "now serving 20-40 years imprisonment." (Pl.'s Br. 8).

The "right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998). Attorney conflict claims fall into one of three categories: (1) per se conflicts; (2) actual conflicts; and (3) potential conflicts. See United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004).

A per se conflict is one so severe that reversal of a conviction is required, even absent a showing of prejudice. Id. at 103. The Second Circuit has limited per se conflicts to circumstances where the attorney was not authorized to practice law or was implicated in the "'same or closely related criminal conduct' for which the defendant is on trial." Id. (quoting United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993)).

In contrast, an actual conflict exists where "the interests of a defendant and his attorney 'diverge with respect to a material factual or legal issue or to a course of action.'" Id. (quoting United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002)). Where a defendant was denied his right to conflict-free counsel based on an actual conflict, he "need only establish (1) an actual conflict of interest that (2) adversely affected his counsel's performance." Schwarz, 283 F.3d at 91. To do so, the defendant must demonstrate a lapse in representation resulting from the conflict, which occurs when "some 'plausible alternative defense strategy or tactic might have been pursued,' and that

- 13 -

. . . 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id. at 92 (quoting United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994)).

A potential conflict exists where "the interests of the defendant may place the attorney under inconsistent duties at some point in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998). Even where a potential conflict exists, the Sixth Amendment is violated only if the conflict resulted in prejudice to the defendant. Levy, 25 F.3d at 152. For the following reasons, I find that there was no conflict of interest.

First, there was no per se conflict. Although Stewart was disbarred on April 24, 2007 (Panel Disbars Stewart, N.Y. Law Journal, Apr. 25, 2007) she was licensed to practice law at the time of Gomez's trial, which took place from January 14, 2002 through February 2, 2002. Additionally, Stewart was being investigated for conduct that was not in any way related to the charges against Gomez. Second, there was no actual conflict. Stewart was present at Gomez's trial, without lapse, and she zealously represented Gomez. She was not indicted until after Gomez's trial. Third, there was no significant potential conflict. Gomez's interests during trial were not at odds with Stewart's interests, then or in the future. Additionally, during a Curcio hearing conducted before sentencing, Gomez waived any objection that he might have had to any conflict of interest arising from Stewart's indictment. Finally, Gomez does not

allege that he suffered any prejudice.  As this was not a per se
conflict, it was waivable.  See United States v. Jones, 381 F.3d
114, 119 (2d Cir. 2004)("Some conflicts mandate disqualification
under the Sixth Amendment . . . If the court determines that the
attorney suffers only from a lesser actual or potential conflict,
it may accept the defendant's knowing and intelligent waiver of
his right to conflict-free counsel.")

       Because Gomez cannot demonstrate any conflict of
interest, nor has he alleged any prejudice, his claim of
ineffective assistance of counsel due to counsel's alleged
conflict of interest is denied.

### 4.   **Vienna Convention Violation**

       Gomez alleges that his counsel was ineffective because
they failed, in violation of the Vienna Convention, to contact
Gomez's native country's consulate so that it might explain to
Gomez the nature of the criminal proceedings brought against him.
The Vienna Convention, however, does not require a defendant's
attorney to contact the consulate of the defendant's native
country.  Under Article 36 of the Vienna Convention, "when a
national of one country is detained by authorities in another,
the authorities must notify the consular officers of the
detainee's home country if the detainee so requests."
Sanchez-Llamas v. Oregon, 548 U.S. 331, 338-39 (2006).
Therefore, the burden is on government authorities, not the
defendant's attorney, to contact the defendant's home country.

- 15 -

Even if Gomez is arguing that counsel was ineffective for failing to raise a claim for a Vienna Convention violation, such an argument fails because the Vienna Convention does not create judicially enforceable individual rights.  Although the Supreme Court has not decided whether the consular-notification provision of the Vienna Convention creates individual rights, the Second Circuit has held that "[t]here is a strong presumption against inferring individual rights from international treaties." United States v. Bustos de la Pava, 268 F.3d 157, 164 (2d Cir. 2001).[4]  The Vienna Convention is a treaty among nations, the purpose of which is to ensure proper performance by consular posts, not to benefit individuals.  See id.

Furthermore, defense counsel's failure to move to dismiss an indictment under Article 36 of the Vienna convention does not constitute ineffective assistance of counsel "[b]ecause a foreign national cannot seek dismissal of an indictment on the basis of an alleged failure of the Government to notify him of his right to consular notification under the Vienna Convention." Id.  Therefore, any motion made by defendant's counsel would have failed.  Id.  Accordingly, Gomez's claim for relief for a violation of the Vienna Convention is denied.

---

[4]     More recently the Second Circuit affirmed its holding in De Los Santos Mora v. New York, 524 F.3d 183, 186-87 (2d. Cir. 2008), cert. denied, 129 S. Ct. 397 (2008), where it held that an alien cannot maintain an action for damages for a violation of the Vienna Convention.

### 5.   Notice of Appeal Following Re-Sentencing

Gomez alleges that counsel was ineffective for failing to file a notice of appeal following Gomez's re-sentencing on November 7, 2006.  "A lawyer who disregards a defendant's specific instructions to file a notice of appeal acts in a professionally unreasonable manner."  Campusano v. United States, F.3d 770, 773 (2d Cir. 2006) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)).  No timely notice of appeal was filed following the November 7, 2006 re-sentencing.  The record shows, however, that Gomez did not instruct his attorney to file a notice of appeal.  On May 30, 2007, Gomez filed a late notice of appeal and a motion for extension of time to file the notice of appeal.  In his motion, Gomez stated that following re-sentencing he "waited for a lawyer to contact him, one never did."  It is clear from Gomez's own motion that he never instructed counsel to file a notice of appeal.

Gomez's failure to instruct counsel to file a notice of appeal does not foreclose the inquiry as to whether counsel acted in a professionally unreasonable manner.  See Roe v. Flores-Ortega, 528 U.S. at 479.  First, with respect to reasonableness, counsel has a

> constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

- 17 -

Flores-Ortega, 528 U.S. at 480; accord Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001).  Second, a defendant must demonstrate that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484.  In setting forth the test, the Supreme Court specifically rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal."  Id. at 480.  To determine whether the defendant "would have appealed" the Court must consider "all relevant factors in a given case," Flores-Ortega, 528 U.S. at 480, "including whether there were non-frivolous issues to appeal."  Sarroca, 250 F.3d at 787.

I conclude that counsel's failure to file an appeal did not constitute ineffective assistance of counsel.  At Gomez's resentencing hearing on November 2, 2006, both counsel and the Court recognized that the Court had no discretion in deviating from the sentence it imposed.  Additionally, the Court stated that even if it did have discretion, the life-sentence was appropriate.  (Tr. at 3).  These decisions are in accord with the law of the Second Circuit.  See United States v. Marmolejas, 112 F. Appx. 779, 784 (2d. Cir. 2004) ("[A] district court's decision not to grant a downward departure is not normally appealable.").  Moreover, Gomez had already appealed his conviction before, unsuccessfully, and there was no basis for appealing these issues again.

## 6.   <u>Writ of Certiorari to Supreme Court</u>

Last, Gomez claims that his appellate counsel's failure to file a petition for a writ of certiorari to the U.S. Supreme Court constituted ineffective assistance of counsel.

A criminal defendant has a constitutional right to the effective assistance of counsel on his first appeal.  <u>See</u> <u>Halbert v. Michigan</u>, 545 U.S. 605, 610 (2005).  This constitutional right does not extend to certiorari review and other discretionary appeals.  <u>Pena v. United States</u>, 534 F.3d 92, 94-95 (2d Cir. 2008); <u>see also</u> <u>Ross v. Moffitt</u>, 417 U.S. 600, 616 (1974) ("[T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required.").  "It follows that because there is no basic right to assistance of counsel in the pursuit of appeals beyond first-tier ones, there is no corresponding right to the effective assistance of counsel for such appeals."  <u>Pena</u>, 534 F.3d at 95.  Thus, Gomez's counsel's failure to file a writ of certiorari does not constitute ineffective assistance of counsel.

Gomez also claims that his appellate counsel violated the Second Circuit's CJA plan, which requires that

> [i]n the event of a decision adverse to the
> CJA client in this Court, the CJA attorney
> shall promptly transmit to the CJA client a
> copy of the Court's decision, advise the CJA
> client in writing of the fight to file a
> petition for writ of certiorari with the
> United States Supreme Court, inform the CJA
> client of the CJA attorney's opinion as to
> the merit and likelihood of success in
> obtaining such a writ, and if requested to do
> so, petition the Supreme Court.

CJA Plan ¶ IX.C.

First, it does not appear that Gomez's counsel violated the CJA rules.  Gomez has not presented any evidence demonstrating that his counsel failed to advise him of his right to seek review from the Supreme Court.  Second, assuming arguendo that there was a violation, Gomez has not proffered compelling evidence justifying relief.  In cases not involving a constitutional violation or lack of jurisdiction, relief under 28 U.S.C. § 2255 is available only when the claimed error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice' and presents 'exceptional circumstances when the need for the remedy afforded by the writ of habeas corpus is apparent.'"  Nnebe v. United States, 534 F.3d 87, 90 (2d Cir. 2008) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Relief is available for a CJA a violation only as "an unusual remedy intended for extraordinary circumstances." Nnebe, 534 F.3d at 92.  Because Gomez did not allege much less prove extraordinary circumstances, his petition for relief is denied.

Gomez has several remaining grounds for relief which he has articulated in a supporting memorandum, not included in his motion.  Rule 2b(1) of the Rules Governing 2255 Proceedings requires that the motion "specify all grounds for relief available to the moving party."  Because Gomez's additional grounds for relief are not contained in the motion as the Rules require, they need not be considered.  Nevertheless, I have

considered Gomez's remaining grounds and find them to be without merit.

### CONCLUSION

For the reasons set forth above, the defendant has failed to demonstrate any basis for relief under 28 U.S.C. § 2255. The motion is therefore denied. Because Gomez has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2255 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

SO ORDERED.

Dated:    New York, New York
          July 30, 2009

DENNY CHIN
United States District Judge

- 21 -